**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIFE ASSOCIATES, INC., | ) | Case Number  10-32363 (JPC) |
| | ) | |
| Debtor. | ) | Honorable Carol A. Doyle |
| | ) | |
| | ) | Hearing Date and Time: |
| | ) | Wednesday, November 16, 2016 |
| | ) | at 10:00 a.m. |
| | ) | |

**NOTICE OF MOTION**

TO:    See attached service list

    **PLEASE TAKE NOTICE** that on Wednesday, the 16th day of November, 2016, at 10:00 a.m., or as soon thereafter as counsel may be heard, we shall appear before the Honorable Carol A. Doyle of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, or any Judge sitting in her place or stead, in courtroom 742 of the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and then and there present that certain COMBINED MOTION OF CHAPTER 11 TRUSTEE TO (A) CLOSE CASE (OR IN THE ALTERNATIVE TO DISMISS CASE), (B) ALLOW AND PAY FINAL FEES AND EXPENSES OF PROFESSIONALS AND THE TRUSTEE AND CERTAIN OTHER ADMINISTRATIVE EXPENSES, (C) APPROVE HA RETIREMENT PLAN ASSET DISCREPANCY RESOLUTION, (D) DISTRIBUTE REMAINING CASH TO ALLOWED PREPETITION CLAIMS PRORATA IN ACCORDANCE WITH PRIOR ORDER, AND (E) FOR RELATED RELIEF, a copy of which is attached hereto and hereby served upon you.

> BRAD A. BERISH, ESQ. (ARDC #06200891)
> **ADELMAN & GETTLEMAN, LTD.**
> 53 West Jackson Boulevard, Suite 1050
> Chicago, Illinois 60604
> Telephone: 312-435-1050
> Facsimile: 312-435-1059
> Counsel for Gregg Szilagyi, Chapter 11 Trustee

**CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of the foregoing Notice of Motion and Combined Motion with all exhibits and the draft Order was served upon the persons listed on the attached Service List via ECF on October 20, 2016, and a true copy of the foregoing Notice of Motion and Combined Motion without exhibits but with the draft Order was or will be served upon the persons listed on the attached Service List via U.S. First Class Mail on October 21, 2016.

> /s/ Brad A. Berish
>     Brad A. Berish, Esq.

778637_1

# <u>SERVICE LIST</u>
## <u>CASE NO:  10-32363</u>

## <u>ALL PARTIES BELOW SERVED VIA CM/ECF:</u>

- Terence G Banich     tbanich@shawfishman.com, kbobb@shawfishman.com
- Brad Berish     bberish@ag-ltd.com, dbaird@ag-ltd.com
- Steven B Chaiken     schaiken@ag-ltd.com, lhope@ag-ltd.com
- Devon J Eggert     deggert@freeborn.com, bkdocketing@freeborn.com
- John W Guzzardo     jguzzardo@shawfishman.com, orafalovsky@shawfishman.com
- Howard Huntington     hhuntington@bullarocarton.com, tdavis@bullarocarton.com
- David F Irwin     david@rentfrolawfirm.net
- Patrick S Layng     USTPRegion11.ES.ECF@usdoj.gov
- John A Lipinsky     jlipinsky@comananderson.com,
  Haskell@ccmlawyer.com;patel@ccmlawyer.com;kirkwood@ccmlawyer.com
- Robert Lynch     robert.lynch2@illinois.gov
- James E. Morgan     jem@h2law.com, smckinney@howardandhoward.com
- James P Mullally     jpm@konewkoandassoc.com
- Charles J Myler     cmyler@mrmlaw.com, kmyler@mrmlaw.com
- David A. Newby     dnewby@comananderson.com, lholub@comananderson.com
- Christian C Onsager     consager@ogfj-law.com, bmoss@ogfj-law.com
- Ronald Peterson     rpeterson@jenner.com, lraiford@jenner.com
- Charis A Runnels     crunnels@morganlewis.com,
  tbecker@morganlewis.com;rcrump@morganlewis.com
- M. Gretchen Silver     ustpregion11.es.ecf@usdoj.gov,
  gretchen.silver@usdoj.gov;denise.delaurent@usdoj.gov;maria.e.yapan@usdoj.gov
- Gregg Szilagyi     gs@tailserv.com,
  gszilagyi@ecf.epiqsystems.com;gszilagyi@epiqtrustee.com
- Eric E. Walker     ewalker@perkinscoie.com,
  nsaldinger@perkinscoie.com;Docketchi@perkinscoie.com
- John Joseph Emmett Zummo     jzummo@howardandhoward.com

**ALL PARTIES BELOW SERVED VIA U.S. FIRST CLASS MAIL:**

Christopher L. Peterson, Esq.
Corporate Counsel
First National of Nebraska, Inc.
1620 Dodge Street, Stop 3290
Omaha, NE  68197-3290
christopherpeterson@fnni.com
*Counsel for Castle Bank*

Ted M. Becker, Esq.
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, IL  60606-1698
Ted.Becker@dbr.com
*Counsel for Principal Life Insurance Company*

Kent Vriezlaar
Tigges, Edgington, Bottaro, Boden & Ross, L.L.P.
613 Pierce Street
Sioux City, Iowa   51102
kvreizlaar@siouxcitylawyers.com

R.L. Billings, president
Billings and Company of Illinois, LLC
2020 Indian Hills Drive
Sioux City, IA   51104-1609


**CREDITORS WITH ALLOWED CLAIMS SERVED VIA U.S. FIRST CLASS MAIL**:

| | |
|---|---|
| Accurate Document Destruction | Federal Express |
| 2500 Landmeier Road | Customer Information Services |
| Elk Grove Village, IL  60007 | As Assignee of FedEx Express/FedEx Ground |
| | Attn:  Revenue Recovery/Bankruptcy |
| Allied National | 3965 Airways Blvd., Module G 3rd Floor |
| PO Box 29188 | Memphis, TN, 38116 |
| Mission, KS  66201 | |
| | First Bankcard |
| Allied National | POB 2818 |
| PO Box 29187 | Omaha, NE  68103-2818 |
| Mission, KS  66201 | |
| | Fox Metro Water Reclamation District |
| American Express Bank, FSB | POB 160 |
| c/o Becket and Lee LLP | Aurora, IL  60507-0160 |
| POB 3001 | |
| Malvern, PA  19355-0701 | |

778637_1

Global
POB 856460
Louisville, KY  40285-6460

Gordon Flesch Co., Inc.
POB 992
Madison, WI  53701-0992

Ice Mountain Spring Water
POB 856680
Louisville, KY  40285-6680

Mid Atlantic Trust Co.
1251 Waterford Place - Suite 525
Pittsburgh, PA  15222-4236

Pitney Bowes Inc
4901 Belfort Road, Suite 120
Jacksonville, FL  32256

Pitney Bowes Global Financial Services,
LLC
4901 Belfort Road, suite 120
Jacksonville, FL   32256

Rockoff, Harlan Rasoff, Ltd.
3818 Oakton Street
Skokie, IL  60076

Sprint Wireless Cards G&LC
POB 4181
Carol Street, IL  60197

Sprint
POB 4191
Carol Stream, IL  60197-4191

State Farm
145 W. Roosevelt Road
West Chicago, IL  60185

Steelcase Financial
475 Sansome Street, 19th floor
San Francisco, CA   94111

Sugar Grove Self Storage
POB 219

Big Rock, IL  60511

SunGard Relius
c/o Maureen A. McGreevey, Esquire
680 East Swedesford Road
Wayne, PA   19087

The Retirement Advantage
47 Park Place, suite 850
Appleton, WI   54914

Village of Sugar Grove
10 Municipal Drive
POB 83
Sugar Grove, IL  60554

First National Bank of Omaha
1620 Dodge Street, Stop Code 3105
Omaha, NE   68197

LAI CAG, LLC
c/o Robert E. Kleeman, Jr.
8130 S. Valley Highway, 3rd floor
Englewood, CO   80112

Aberdeen Housing Authority
PO Box 69
Aberdeen, MS  39730

Alachua County Housing Authority
703 NE 1st Street
Gainesville, FL  32601

Alexander County Housing Authority
PO Box 191
Cairo, IL  62914

Altoona Housing Authority
2700 Pleasant Valley Blvd.
Altoona, PA  16602

Beaufort Housing Authority
PO Box 1104
Beaufort, SC  29902

Berlin Housing Authority
10 Serenity Circle
Berlin, NH  03570

Big Stone County HRA
11 SE Second Street, Suite 102
Ortonville, MN 56278

Bloomington Housing Authority
104 East Wood Street
Bloomington, IL 61701

Bureau County Housing Authority
444 South Church Street
Princeton, IL 61356

Childersburg Housing Authority
PO Box 396
Childersburg, AL 35044

City of Dardanelle
PO Box 360
Dardanelle, AR 72834

City of De Pere Housing Authority
850 Morning Glory Lane
De Pere, WI 54115

City of Kearney Housing Authority
2715 Avenue I
Kearney, NE 68847

City of Madison Housing and Rdvpmt Auth.
310 Park Avenue
Madison, MN 56256

City of Terre Haute Dpt. of Rdvpmt
17 Harding Ave. 301 City Hall
Terre Haute, IN 47807

Claremont Housing Authority
243 Broad Street
Claremont, NH 03743

Clarksville Housing Authority
P.O. Box 603
Clarksville, TN 37040

Concord Housing Authority
23 Green Street

Concord, NH 03301

De Witt County Housing Authority
PO Box 553
Clinton, IL 61727

DuPage Housing Authority
711 East Roosevelt Road
Wheaton, IL 60187

Dyersburg Housing Authority
PO Box 824
Dyersburg, TN 38024

East Chicago Housing and Redevelopment
Authority
P.O. Box 498
East Chicago, IN 46312

Economic Development Housing Auth.
600 DeMers Avenue
East Grand Forks, MN 56721

Edwards County Housing Authority
125 West Cherry Street
Albion, IL 62806

Effingham County Housing Authority
215 North Banker Street
Effingham, IL 62401

Farmville North Carolina Housing Authority
PO Box 282
Farmville, NC 27828

Fayette County Housing Authority
624 Pittsburgh Road
Uniontown, PA 15401

Franklin Housing Authority
New Hampshire Housing Finance Authority
32 Constitution Drive
Bedford, NH 03110

Gas Board of the City of Boaz
PO Box 594
Boaz, AL 35957

Grant County Housing and Rdvpmt Auth.
10 Second Street
Elbow Lake, MN  56531

Hobson City Housing Authority
800 Armstrong Street
Hobson City, AL  36201

Hooper Housing Authority
100 E. Maple Street
Hooper, NE  68031

Hot Springs Housing Authority
PO Box 296
Hot Springs, NC  28743

Housing and Rdvpmt Auth. Of Alexandria
805 Fillmore Street
Alexandria, MN  56308

Housing and Rdvpmt Auth. of Austin
308 2nd Avenue NE
Austin, MN  55912

Housing and Rdvpmt Auth. of Bemidji
619 America – Northland Apartments
Bemidji, MN  56601

Housing and Rdvpmt Auth. of Benson
300 13th Street North
Benson, MN  56215

Housing and Rdvpmt Auth. of Brainerd
324 East River Road
Brainerd, MN  56401

Housing and Rdvpmt Auth. of Carlton
950 Fourteenth Street
Cloquet, MN  55720

Housing and Rdvpmt Auth. Of Chisholm
519 Sixth Street – S.W.
Chisholm, MN  55719

Housing and Rdvpmt Auth. of Clarkfield
1012 12th Avenue #101

Clarkfield, MN  56223

Housing and Rdvpmt Auth. of Cottonwood
425 West Prairie Street
Cottonwood, MN  56229

Housing and Rdvpmt Auth. of Crosby
300 Third Avenue N.E.
Crosby, MN  56441

Housing and Rdvpmt Auth. of Ely
114 North 8th Avenue East #111
Ely, MN  55731

Housing and Rdvpmt Auth. of Eveleth
P.O. Box 678
Eveleth, MN    55734

Housing and Rdvpmt Auth. of Fairmont
500 Home Street
Fairmont, MN  56031

Housing and Rdvpmt Auth. of Fergus Falls
1151 Friberg Ave
Fergus Falls, MN  56537

Housing and Rdvpmt Auth. of Forest Lake
7 Northeast Fifth Avenue
Forest Lake, MN  55025

Housing and Rdvpmt Auth of Gilbert
120 Ohio Avenue West
Gilbert, MN  55741

Housing and Rdvpmt Auth of Glenwood
507 S.E. Fifth Street
Glenwood, MN  56334

Housing and Rdvpmt Auth. of Hibbing
3115 Seventh Avenue East
Hibbing, MN  55746

Housing and Rdvpmt Auth. of Int'l Falls
1200 Riverside Drive
International Falls, MN  56649

Housing and Rdvpmt Auth. of Jackson
116 State Street #414
Jackson, MN  56143

Housing and Rdvpmt Auth. of Janesville
106 East North Street
Janesville, MN  56048

Housing and Rdvpmt Auth. of Lincoln City
PO Box 27
Ivanhoe, MN  56142

Housing and Rdvpmt Auth. of Lindstrom
12940 First Avenue North
Lindstrom, MN  55045

Housing and Rdvpmt Auth. of Litchfield
122 West Fourth Street
Litchfield, MN  55355

Housing and Rdvpmt Auth. of Little Falls
901 SW First Avenue
Little Falls, MN  56345

Housing and Rdvpmt Auth. of Luverne
216 North McKenzie
Luverne, MN  56156

Housing and Rdvpmt Auth. of Montevideo
501 North 1st Street
Montevideo, MN  56265

Housing and Rdvpmt Auth. of Morris
100 South Columbia Avenue
Morris, MN  56267

Housing and Rdvpmt Auth. Of Mountain
Lake
1225 Third Avenue
Mountain Lake, MN  56159

Housing and Rdvpmt Auth. of New
Richland
PO Box 397
New Richland, MN  56072

Housing and Rdvpmt Auth. of Pequot Lakes
Box 243
Pequot Lakes, MN  56472

Housing and Rdvpmt Auth. of Pine River
312 1st South Street #100
Pine River, MN  56474

Housing and Rdvpmt Auth. Red Lake Falls
209 International Drive SW
Red Lake Falls, MN  56750

Housing and Rdvpmt Auth. of St. James
415 Armstrong Boulevard North
St. James, MN  56081

Housing and Rdvpmt Auth. of St. Peter
1010 South 4th Street
St. Peter, MN  56082

Housing and Rdvpmt Auth. of Swift County
PO Box 286
Benson, MN  56215

Housing and Rdvpmt Auth. of Walker
PO Box 217
Walker, MN  56484

Housing and Rdvpmt Auth. of Warroad
601 MacKenzie Avenue N.E.
Warroad, MN  56763

Housing and Rdvpmt Auth. of Windom
605 Tenth Street
Windom, MN  56101

Housing and Rdvpmt Authority of Cloquet
950 Fourteenth Street
Cloquet, MN  55720

Housing and Redevelopment Authority
City of Lebanon
P.O. Box 420
Lebanon, PA  17042

Housing Authority City of East St. Louis
700 North 20th Street
East St. Louis, IL  62205

Housing Auth. City of Lawrence Maint. Prs
PO Box 988
New Castle, PA  16103

Housing Authority of David City
1125 Third Street
David City, NE  68632

Housing Authority of Elgin
120 S. State
Elgin, IL  60123

Housing Authority of Piatt County
103 W. First Street
Hammond, IL  61929

Housing Authority of the City of Boaz
PO Box 723
Boaz, AL  35957

Housing Auth. of the County of Cass, IL
9 Otto Turner Drive
Beardstown, IL  62618

Housing Authority of the County of Logan
1028 North College Street
Lincoln, IL  62656

Housing Authority of the County of Wayne
303 North First Street
Fairfield, IL  62837

Housing Authority of the Town of Calera
PO Box 136
Calera, AL  35040

Housing Authority of the Town of Exeter
277 Water Street
Exeter, NH  03833

Housing Authority of Champaign County
205 West Park Avenue
Champaign, IL  61820

Housing Authority of Douglas County
902 W. Stanton Street

Roseburg, OR  97470

Housing Authority of Grundy County
1700 Newton Place
Morris, IL  60450

Housing Authority of Johnson County
PO Box 188
Vienna, IL  62995

Housing Authority of Loup City
1048 K Street
Loup City, NE  68853-8014

Housing Authority of Ogle County
200 W. Washington St., #100
Oregon, IL   61061

Housing Authority of Pope County
802 S. Franklin Street
Golconda, IL  62938

Housing Authority of Pulaski County
PO Box 246
Mounds, IL  62964

Housing Authority of Red Bay
PO Box 1426
Red Bay, AL  35582

Housing Authority of Somerset County
350 Garrett Ave, Box 38
Boswell, PA  15531

Housing Authority of South Bend
P.O. Box 11057
South Bend, IN  46634

City of Alton, Illinois
c/o Clifford Emons
112 W. Homer Adams Pkwy
Alton, IL  62002

Housing Authority,
City of Burwell
PO Box 490
Burwell, NE  68823

Housing Authority,
City of Chaffee
904 South Second Street
Chaffee, MO  63740

Housing Authority, City of Bainbridge
PO Box 304
Bainbridge, GA  31717

Housing Authority, City of Benkelman
100 Rainbow FTN Park
Benkelman, NE  69021

Brownsville Housing Authority
2602 Boca Chica Boulevard
Brownsville, TX   78521

Housing Authority, City of Columbia
1917 Harden Street
Columbia, SC  29204

Housing Authority, City of Creighton
1106 Millard Avenue
Creighton, NE  68729

Housing Authority, City of Crete
1600 Grove Avenue
Crete, NE  68333

Housing Authority, City of Dardanelle
402 South Fifth
Dardanelle, AR  72834

Housing Authority, City of Decatur
PO Box 878
Decatur, AL  35601

Housing Authority, City of Easton
PO Box 876
Easton, PA  18044-0876

Housing Authority, City of East Point
PO Box 91363
East Point, GA  30364

Housing Authority, City of Eatonton

PO Box 3700
Eatonton, GA  31024

Housing Authority, City of Elkhart
1396 Benham Avenue
Elkhart, IN  46516

Housing Authority, City of Fort Pierce
511 Orange Avenue
Fort Pierce, FL  34950

Housing Authority, City of Ft. Smith
2100 North 31st Street
Fort Smith, AR  72901

Housing Authority, City of Gary
578 Broadway
Gary, IN  46402

Housing Authority, City of Georgetown
PO Box 209
Georgetown, SC  29442

Housing Authority, City of Greenville, SC
122 Edinburgh Court
Greenville, SC    29607

Housing Authority, City of Harlingen
PO Box 1669
Harlingen, TX  78551

Housing Authority, City of Jasper
PO Box 582
Jasper, AL  35502

Housing Authority, City of Laredo
2000 San Francisco Avenue
Laredo, TX  78040

Housing Authority, City of Laurens
PO Box 749
Laurens, SC  29360

Housing Authority, City of Marion
501 N. Market Street
Marion, IL  62959

Housing Authority, City of Martinsburg
703 Porter Avenue
Martinsburg, WV  25401

Housing Authority, City of Mission
1300 E. 8th Street
Mission, TX  78572

Housing Authority, City of New Bern
PO Box 1486
New Bern, NC  28560

Housing Authority, City of New Richmond
370 Odanah Avenue
New Richmond, WI  54017

Housing Authority, City of North Chicago
1440 Jackson Street
North Chicago, IL  60064

Housing Authority, City of Ord
PO Box 348 2410 K Street
Ord, NE  68862

Housing Authority, City of Pekin
1901 Broadway
Pekin, IL  61554

Housing Authority, City of Quitman
PO Box 229
Quitman, GA  31643

Housing Authority, City of Scottsboro
102 Worthington Street
Scottsboro, AL  35768

Housing Authority, City of Stanton
PO Box 658
Stanton, NE  68779

Housing Authority, City of Talladega, AL
151 Curry Court
Talladega, AL  35160

Housing Authority, City of Williamsport
245 W. Fourth Street
Williamsport, PA  17701

Housing Authority, County of Dauphin
PO Box 7598
Steelton, PA  17113

Housing Authority, County of De Kalb
310 North Sixth Street
De Kalb, IL  60115

Housing Authority, County of Hamilton
500 S. Marshall Avenue
McLeansboro, IL  62859

Housing Authority, County of Jo Daviess
PO Box 6007
Galena, IL  61036

Housing Authority, County of Lawrence
PO Box 988
New Castle, PA  16103

Housing Authority, County of Scottsbluff
89A Woodley Park Road
Gering, NE  69341

Vermillion County Housing Authority
601 South Chicago Avenue
Rossville, IL  60963

Housing Authority, Sunnyside Washington
204 S. 13th Street
Sunnyside, WA  98944

Housing Authority, Town of Montevallo
PO Box 13
Montevallo, AL  35115

Housing Authority, Village of Coleridge
PO Box 96
Coleridge, NE  68727

Housing Authority, Village of Frederic
104 3rd Avenue South
Frederic, WI  54837

Huntsville Housing Authority
c/o Chad W. Ayers

Wilmer & Lee, P.A.
P.O. Box 2168
Huntsville, AL  35804

Kankakee County Housing Authority
PO Box 965
Kankakee, IL  60901

Knox County Housing Authority
255 West Tompkins Street
Galesburg, IL  61401

Lebanon Housing Authority
PO Box 5475
West Lebanon, NH  03784

Lee County Housing Authority
c/o Megan G. Heeg
Ehrmann Gehlbach Badger Lee &
Considine, LLC
215 E. First St., P.O. Box 477
Dixon, IL  61021

Livingston County Housing Authority
903 West North Street
Pontiac, IL  61764

Madison County Housing Authority
c/o Clifford Emons
112 W. Homer Adams Pkwy
Alton, IL    62002

Manchester Housing and Rdvpmt Authority
c/o Michele Desmond
198 Hanover Street
Manchester, MN  03104

Mars Hill Housing Authority
PO Box 186
Mars Hill, NC  28754

Marshall Housing Authority
PO Box 176
Marshall, NC  28753

Mason County Housing Authority
201 E. Hurst Avenue
Havana, IL  62644

Massac County Housing Authority
PO Box 528
Metropolis, IL  62960

Mercer County Housing Authority
609 N.W. 4th Avenue
Aledo, IL  61231

Mercer County Housing Authority
80 Jefferson Avenue
Sharon, PA  16146

Morrison County Housing and Rdvpmt
Auth.
304 2nd Street S.E.
Little Falls, MN  56345

Moorhead Public Housing Agency
800 Second Avenue North
Moorhead, MN  56560

Mower County Housing and Rdvpmt Auth.
59038 220th Street
Austin, MN  55912

Nashua Housing Authority
40 East Pearl Street, First Floor
Nashua, NH  03060-3462

Newmarket Housing Authority
34 Gordon Avenue
Newmarket, NH  03857

Perry County Housing Authority
PO Box 255
DuQuoin, IL  62832

Pine City Housing Authority
905 7th Street
Pine City, MN  55063

Princeton Housing and Rdvpmt Authority
801 N. 3rd Street
Princeton, MN  55371

Public Housing Comm., City of Marshall
202 N. 1st Street
Marshall, MN  56258

Randolph County Housing Authority
916 George Street
Chester, IL  62233

Rdvpmt Authority of the City of Easton
1 South Third Street
Easton, PA    18042

Red Wing Housing and Rdvpmt Authority
428 West Fifth Street
Red Wing, MN  55066

River Ridge Development Authority
6200 E. Highway 62
Jeffersonville, IN  47130

S. Carolina Regional Housing Auth. No. 1
PO Box 326
Laurens, SC  29360

Sanford Housing Authority
PO Box 636
Sanford, NC  27331

Sauk City Housing Authority
200 Webster Avenue
Sauk City, WI  53583

Sleepy Eye Housing and Rdvpmt Authority
313 4th Avenue S.E.
Sleepy Eye, MN  56085

Somersworth Housing Authority
PO Box 31
Somersworth, NH  03878

Springfield Housing Authority
80 Main Street
Springfield, VT    05156

Statesville Housing Authority
110 W. Allison Street

Statesville, NC  28677

The Johnson City Housing Authority
PO Box 59
Johnson City, TN  37601

The Waverly Housing Authority
35 West Brookside Drive
Waverly, TN    37185

Top of Alabama Regional Housing Auth.
PO Box 733
Boaz, AL  35957

Vermont State Housing Authority
One Prospect Street
Montpelier, VT  05602

Warren County Housing Authority
200 East Harlem Avenue
Monmouth, IL  61462

Whiteside County Housing Authority
401 West 18th Street
Rock Falls, IL  61071

Woodford County Housing Authority
410 East Eureka
PO Box 223
Eureka, IL  61530

**OTHER HA CUSTOMERS OF
DEBTOR WHO ARE NOT
CREDITORS BUT MAY BE
IMPACTED BY IRS DISCREPANCY
RESOLUTION SERVED VIA U.S.
FIRST CLASS MAIL**:

Housing and Rdvpmt Auth. of Barnesville
PO Box 158
Barnesville, MN  56514

Big Spring Housing Authority
201 N.E. 7th Street
Big Spring, TX  79720

Brazil Housing Authority

122 W. Jackson Street
Brazil, IN  47834

Brownsville Affordable Homeownership
Corporation
896 Ridgewood, Suite C
Brownsville, TX  78520

Housing Authority of the City of Childress
PO Box 722
Childress, TX  79201

Cicero Housing Authority
1634 S. Laramie Avenue
Cicero, IL  60804

Housing Authority of the City of Denison
PO Box 475
Denison, TX  75020

The Housing Authority of the City of Donna
PO Box 667
Donna, TX  78537

Housing Authority of Duval County
PO Box 366
San Diego, TX  78384

Housing Auth. of the City of East Chicago
PO Box 498
East Chicago, IN  46312

City of Edcouch Housing Authority
PO Box 92
Edcouch, TX  78538

Housing Authority of the City of Elsa
PO Box 98
Elsa, TX  78596

Housing Authority of Hale Center
PO Box 1257
Hale Center, TX  79041

Hancock County Housing Authority
PO Box 472

Dallas City, IL  62330

Huntsville Housing Authority
299 MLK Drive #1
Huntsville, TX  77320

Housing Authority of the City of Killeen
731 Wolf Street
Killeen, TX  76541

Kingsville Housing Authority
1000 West Corral
Kingsville, TX  78363

Knox City Housing Authority
PO Box 746
Knox City, TX  79529

La Joya Housing Authority
PO Box 1409
La Joya, TX  78560

Los Fresnos Housing Authority
PO Box 627
Los Fresnos, TX  78556

Housing Auth. of the City of Marshall, TX
PO Box 609
Marshall, TX  75671

Meeker County Housing Authority
PO Box 277
Dassel, MN  55325

City of Memphis Housing Authority
PO Box 127
Memphis, TX  79245

Mercedes Housing Authority
306 West 5th Street
Mercedes, TX  78570

Housing Authority of the City of Meridian
PO Box 363
Meridian, TX  76665

Midland County Housing Authority
1710 Edwards

Midland, TX  79701

Housing Authority of the City of Midland
700 W. Scharbauer Drive
Midland, TX  79705

Munday Housing Authority
PO Box 177
Munday, TX  76371

Housing Authority of the City of Nocona
400 Hobson Street
Nocona, TX  76255

Housing Authority of the City of Okolona
PO Box 190
Okolona, MS  38860

Paragould Housing Authority
612 E. Canal Street
Paragould, AR  72450

Housing and Rdvpmt Auth. of Redwood
Falls
300 South Minnesota Street
Redwood Falls, MN  56283

San Juan Housing Authority
700 Maldonado Drive
San Juan, TX  78589

Sinton Housing Authority
900 Harvill
Sinton, TX  78387

Taft City Housing Authority
223 Avenue C
Taft, TX  78390

Throckmorton Housing Authority
PO Box 457
Throckmorton, TX  76483

Top of Alabama Regional Housing Auth.
PO Box 733
Boaz, AL  35957

**GOVERNMENT PARTIES SERVED
VIA U.S. FIRST CLASS MAIL**:

Department of Treasury Internal Revenue
Service
P.O. Box 7346
Philadelphia, PA  19101

Internal Revenue Service
Special Procedures Branch
230 S. Dearborn, Suite 3030A
Attn: STOP 5010-CHI
Chicago IL 60604-0000

Illinois Department of Revenue
100 W. Randolph
Bankruptcy Section – Level 7-425
Chicago, IL  60601

Internal Revenue Service
c/o Stephanie Bennett
SE:T:EP:RA:VC:Group 7550
6340 Variel Avenue
Woodland Hills, CA    91367-2546

Illinois Department of Employment Security
Benefit Payment Control Division
P.O. Box 4385
Chicago, IL    60680

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIFE ASSOCIATES, INC., | ) | Case No. 10-32363 (JPC) |
| | ) | |
| Debtor. | ) | Honorable Carol A. Doyle |
| | ) | |
| | ) | **Hearing Date and Time:** |
| | ) | **Wednesday, November 16, 2016 at 10:00 a.m.** |

**COMBINED MOTION OF CHAPTER 11 TRUSTEE TO (A) CLOSE CASE (OR IN THE ALTERNATIVE TO DISMISS CASE), (B) ALLOW AND PAY FINAL FEES AND EXPENSES OF PROFESSIONALS AND THE TRUSTEE AND CERTAIN OTHER ADMINISTRATIVE EXPENSES, (C) APPROVE HA RETIREMENT PLAN ASSET DISCREPANCY RESOLUTION, (D) DISTRIBUTE REMAINING CASH TO ALLOWED PREPETITION CLAIMS PRO RATA IN ACCORDANCE WITH PRIOR ORDER, AND (E) FOR RELATED RELIEF**

TO:   THE HONORABLE CAROL A. DOYLE
      U.S. BANKRUPTCY JUDGE:

Now comes Gregg Szilagyi, not individually, but solely as the duly appointed and serving Chapter 11 trustee (the "**Trustee**") in the above-captioned case, by and through his undersigned counsel, for his combined motion ("**Motion**") to (A) Close Case (or In The Alternative to Dismiss Case), (B) Allow and Pay Final Fees and Expenses of Professionals and the Trustee and Certain Other Administrative Expenses, (C) Approve HA Retirement Plan Asset Discrepancy Resolution, (D) Distribute Remaining Cash To Allowed Pre-petition Claims Pro Rata In Accordance with Prior Order, and (E) For Related Relief, pursuant to Sections 105, 330, 350, 363, 502, 503, and 507 of the Bankruptcy Code (the "**Code**"), and rules 2002, 3002, 3003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Rule(s)**"), and respectfully states as follows:

## I.   INTRODUCTION

During the past three plus years since his appointment, the Trustee has, among other things, successfully (a) sold the Debtor's business and otherwise liquidated all remaining known assets of the Debtor's estate (the "**Estate**"), and (b) resolved and determined all pre-petition and administrative claims asserted against the Debtor or during this Chapter 11 Case.

All that remains in this Chapter 11 Case are (a) $459,000 (est.) in cash that the Trustee is holding (the "**Cash**"), (b) $292,171.04 of unpaid fees and costs sought to be paid by the Trustee and his professionals (the "**Professional Fees**"), (c) certain outstanding U.S. Trustee fees totaling less than approximately $10,400 (the "**U.S. Trustee Fees**"), (d) $34,750 (the "**Discrepancy Resolution Application Fee**") owed to the IRS in connection with the Discrepancy Resolution Process (hereafter defined) previously approved by this Court, and (e) $7,567,265.33 of allowed prepetition unsecured claims in this Chapter 11 Case (the "**Allowed Prepetition Claims**").

By this Motion, the Trustee requests authority to (i) allow his and his professionals' fees and expenses, (ii) distribute the Cash to pay in full the unpaid and allowed Professional Fees, the U.S. Trustee Fees, and the Discrepancy Resolution Application Fee, and (iii) to distribute the balance pro rata to the Allowed Pre-petition Claims pursuant to this Court's prior order of June 8, 2016 [Dkt. No. 1490] (the "**Prepetition Claims Distribution Order**"), and (iii) close this Chapter 11 Case.

The Trustee believes that the relief sought herein is prudent, cost-effective, and in the best interest of the creditors of the Estate for the following reasons. Under the priorities established under the Code and under the terms of the Prepetition Claims Distribution Order, the vast majority of Allowed Prepetition Claims in this Chapter 11 Case will receive a dividend of at least 1.3% if this Motion is granted. The alternatives to this Motion include (a) having this Chapter 11 Case converted to a case under Chapter 7 and then allowing or permitting

distributions of the remaining Cash to allowed claims, or (b) having the Trustee file and pursue

confirmation of a plan of liquidation in this Chapter 11 Case.  However, either alternative will be

be extremely costly and will result in both a significant delay of any distribution to the Allowed

Prepetition Claims and a significant reduction, if not, a complete elimination of any distribution

to such claimants due to the added administrative costs involved in pursuing either route.  In

addition, the Trustee also believes that allowing the Professional Fees by this motion will result

in significant cost savings that would otherwise be incurred should each professional and the

Trustee instead be required to prepare and file separate motions to obtain the allowance of their

fees incurred in this Chapter 11 Case, which again, will significantly impact and reduce or

eliminate the small distribution that would otherwise go to the Allowed Prepetition Claims under

the terms of this Motion.  Finally, the Trustee has previously communicated with counsel for the

the U.S. Trustee and with virtually all counsel who have appeared in this Chapter 11 Case for

Allowed Prepetition Claims about the general relief sought by this Motion and none have

opposed this method to conclude this Chapter 11 Case.  Nonetheless, this Motion is being served

served on all holders of Allowed Prepetition Claims in this Chapter 11 Case by at least 21 days

notice.

Accordingly, for the reasons set forth herein, the Trustee requests that this Motion be

granted.

## II.    BACKGROUND

### A.    Jurisdiction, Case Background and Appointment of Trustee

1.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.       The statutory predicates for the relief requested herein are Sections 105, 330, 350,

363, 502, 503, and 507 of Code, and Rules 2002, 3002, 3003, and 6004.

3.       On July 21, 2010 (the "**Petition Date**"), the Debtor filed this case under Chapter

11 of the Code (the "**Chapter 11 Case**").  From the Petition Date through May 7, 2013, the

Debtor remained in possession of its assets and continued to operate its business as debtor in

possession in the Chapter 11 Case in accordance with 11 U.S.C. §§ 1107 and 1108.

4.       On May 8, 2013, this Court entered that certain Order [Dkt. No. 273] appointing

the Trustee as trustee for the Debtor, thereby taking the Debtor out of possession and placing its

assets and business under the control of the Trustee.

5.       There has been no committee of unsecured creditors appointed in the Chapter 11

Case.

### B.       History of the Debtor and Its Business

6.       At the time of the Trustee's appointment in 2013, the Debtor was located in Sugar

Grove, Illinois, and it operated a business that focused on administering retirement plans to

government agencies generally, and specifically to public housing authorities (the "**HA(s)**"),

across the United States (the "**Business**").  The Debtor's core product was the administration of

government agency retirement plans to which the HAs and their employees make periodic

contributions (the "**Retirement Plans**").  In addition, the Debtor also offered administration of,

and certain of the HAs participated in, group life insurance plans ("**Life Insurance Plans**").  The

The investments under the Retirement Plans were offered by the Debtor through, and the actual

investments in the Retirement Plans were held by, the Principal Life Insurance Company (the

"**Principal**").  Castle Bank, a division of the First National Bank of Omaha ("**Castle Bank**"),

was a party to various agreements in connection with the Retirement Plans and Life Insurance

Plans, and acted as a custodian or trustee for these plans.  The Debtor effectively served as a

third-party administrator ("**TPA**") for the Retirement Plans and the Life Insurance Plans, and its services included, without limitation, recordkeeping for the HA Employer(s) of the Retirement Plans and Life Insurance Plans, and its revenues were derived primarily from an asset based service fee charged to its participants on a monthly basis on assets held in the Retirement Plans.

7.     Although the Debtor's original bankruptcy schedules filed in 2010 listed only a handful of creditors with claims totaling less than $90,000, in March 2011 the Debtor amended its bankruptcy schedules [Dkt. No. 89] to list a few thousand creditors that were current or former employees of HAs that were current or former customers of the Business, with disputed claims exceeding $6 million relating to the Debtor's pre-petition disposition of funds obtained as a result of the demutualization of Principal in 2002.  The circumstances surrounding the demutualization of Principal and the Debtor's prepetition use of the demutualization proceeds (the "**Demutualization Matters**" or "**Demutualization Proceeds**") was investigated and reported to the Court in two extensive reports filed with the Court [Dkt. Nos. 147 and 158] in October and November 2011 (the "**Examiner Reports**"), by an examiner that had been appointed by the Court.  The Examiner Reports concluded, among other things, (a) that the Debtor had breached its fiduciary duties to the HA's pertaining to the Debtor's handling of the Demutualization Proceeds, (b) that the HA's had claims against the Debtor relating thereto, and (c) that any such demutualization claims belonged to the HAs and not their employees. Thereafter, based upon the findings in the Examiner Reports, in April 2012, the Debtor again amended its bankruptcy schedules [Dkt. No. 186] to list 185 HAs, that were current or former customers of the Debtor, as creditors holding undisputed fixed claims totaling approximately $7.5 million relating to the Demutualization Matters.

8.     The Trustee's appointment by the Court in May 2013 was prompted primarily by circumstances which began on March 25, 2013, when the ownership and control of the Debtor

effectively changed hands, because the individual allegedly responsible -- Richard Zachmann

("**Zachmann**"), according to the Examiner Reports -- for causing the Demutualization Matters,

obtained control of the Debtor from his ex-wife, Lori Zachmann, following the entry of a divorce

decree in a State court that effectively awarded him 100% ownership of the stock of the Debtor.

At that time, Zachmann was also the subject of a criminal indictment in connection with the

Demutualization Matters disclosed in the Examiner Reports.  Certain of the HAs then filed a

motion, on March 26, 2016, to appoint a trustee in the Chapter 11 Case, which this Court granted

on May 1, 2013 [Dkt. No. 267], and the Trustee was appointed.

9.      Thereafter, the Trustee retained Adelman & Gettleman, Ltd. ("**General Counsel**"

or "**A&G**"), by Order entered on May 15, 2013 [Dkt. No. 281], and the accounting firm of

Popowcer Katten ("**Accountant**"), as accountants for the Trustee, by Order entered on August 7,

2013 [Dkt. no. 298].

### C.      Impact and Resolution of HA Retirement Plan Asset Discrepancy

10.      Following the Trustee's appointment, he learned from the Debtor's employees

that several HAs had written to the Debtor, both shortly before and after his appointment,

requesting that the entirety of their Retirement Plan assets be transferred out of the Retirement

Plans held at Principal to a completely new vendor and provider (the "**Transfer Requests**").

The Trustee believed that the circumstances which may have led to many, if not, most of those

then recent Transfer Requests were the same which led to the appointment of the Trustee and the

displacement of Zachmann from control of the Debtor, as discussed above in subsection B.

11.      Following his appointment, the Trustee also learned from the Debtor's current

and former representatives of the existence of a discrepancy concerning the fact that the

allocations that the Debtor recorded in plan statements for participant accounts and HA

Employer Retirement Plans exceeded the total amount actually held in the investment funds at

Principal (the "**Discrepancy**").  Upon this finding, the Trustee sought and obtained Court

approval on June 5, 2013 [Dkt. No. 286] to retain Ogletree, Deakins, Nash, Smoak & Stewarts,

P.C. ("**Benefits Counsel**" or "**Ogletree**") as special counsel concentrating in retirement benefits

law.

12.     Thereafter, and based on a preliminary investigation by the Benefits Counsel, the

Trustee learned that: (i) the Discrepancy is something that arose and was discovered about a

couple years prior to the Petition Date, and resulted from an accounting error; (ii) the Debtor has

been addressing the accounting defect on a go forward basis, but the initial Discrepancy itself

was never corrected; (iii) the Discrepancy was relatively small – approximating less than 1% of

the total assets in all of the Retirement Plans; (iv) it was critical that the Discrepancy be

promptly resolved with the appropriate governmental authorities and/or under applicable Internal

Revenue Service ("**IRS**") laws in order to maintain the tax-deferred status of all of the

Retirement Plans; (v) prior management of the Debtor never sought to correct this Discrepancy

with appropriate governmental authorities and/or under applicable laws; and (vi) the method to

resolve or eliminate the Discrepancy is to present a proposal to the IRS for its approval pursuant

to IRS Revenue Procedure 2013-12 (the "**Discrepancy Resolution Process**").

13.     In light of the issues raised by the Discrepancy and the pending Transfer

Requests, on July 12, 2013, the Trustee filed a motion [Dkt. No. 292] requesting authority from

the Court to allow the Trustee to proceed with the Discrepancy Resolution Process to resolve the

Discrepancy and to place a temporary hold on any and all Transfer Requests until completion of

the Discrepancy Resolution Process.  Thereafter, on July 24, 2013, this Court entered an Order

granting that motion [Dkt. No. 296] ("**Order Authorizing Discrepancy Resolution Process**").

14.     Thereafter, in early 2014 and with the assistance of his Benefits Counsel, the

Trustee submitted a proposal, along with a required down payment on a processing fee of

$20,000 to the IRS, to initiate the Discrepancy Resolution Process.  Following the Sale (hereafter

(hereafter defined) of the Business shortly thereafter, and pursuant to the terms of that Sale, the

Trustee was required to continue to cooperate with the Buyer (hereafter defined) to complete the

Discrepancy Resolution Process with the IRS.  For the next two plus years, the Trustee, through

his Benefits Counsel, continued to provide data to, respond to inquiries from, and negotiated

with, the IRS and the Buyer, all in an effort to try to conclude the Discrepancy Resolution

Process.  Recently, the Trustee, the Buyer and the IRS reached a resolution in principal on the

terms of two agreements that would conclude the Discrepancy Resolution Process and resolve

the Discrepancy (the "**Discrepancy Resolution**" or "**Discrepancy Resolution Agreements**").

A copy of the Discrepancy Resolution Agreements are attached hereto as **Exhibit A**.  Under the

Discrepancy Resolution Agreements and the terms of the Sale, only the Buyer, and not the

Trustee, is obligated to implement the Discrepancy Resolution because the Buyer, and not the

Trustee, is currently administering the HA Retirement Plans.  However, the IRS does require that

that both the Trustee and the Buyer execute the Discrepancy Resolution Agreements.  In

addition, as part of the Discrepancy Resolution and consistent with the Trustee's obligations to

the Buyer under the terms of the Sale, the Trustee is required to pay the balance of the

Discrepancy Resolution Application Fee totaling $34,750 to the IRS under the terms of the

Discrepancy Resolution Agreements.  Once the Trustee executes the Discrepancy Resolution

Agreements and pays the balance of the Discrepancy Resolution Application Fee, he will have

concluded the Estate's obligations with respect to the Discrepancy Resolution Process.

Accordingly, by this Motion, and consistent with the authority previously approved by this Court

under the terms of the Order Authorizing Discrepancy Resolution Procedure, the Trustee seeks

authority to execute the Discrepancy Resolution Agreements and to pay the IRS the remaining

balance due of the Discrepancy Resolution Application Fee.

D.    **The Need For And Sale of the Debtor's Business**

15.    The Transfer Requests made in 2013 came from a significant portion of the

Debtor's then current customer base - approximating 27.5% of the current HA Employer

customers holding approximately 38% of the total Retirement Plan assets at the Principal.

Indeed, the Transfer Requests seemed to significantly increase in March 2013 when prior

management was ousted by Zachmann who had been blamed for the Demutualization Matters in

the Examiner Reports.  Even so, by the time of the Trustee's appointment, there still remained a

significant portion of customers of the Debtor who had not yet sent Transfer Requests.  Under

these circumstances, the Trustee determined in mid-2013 that it was in the best interests of the

Debtor's creditors, which consist primarily of current and former HA Employer customers, that

the Business be sold as a going concern as soon as possible (i) before further customer Transfer

Requests occurred, (ii) while its operations and customer base were still relatively significant in

size in order to garner the highest and best value, and (iii) so that the administration of the

remaining Retirement Plans with the Debtor could continue into the future uninterrupted and by

a reputable entity that was not operating under the constraints of a bankruptcy proceeding.

16.    In consideration of the foregoing, beginning in approximately July 2013, the

Trustee commenced marketing efforts to try to sell the Debtor as a going concern. Through those

efforts, the Trustee received several offers, held an informal auction at which a high bid was

accepted (the "**Buyer**"), and that Buyer's bid was thereafter presented and approved by this

Court's Order entered on February 13, 2014 [Dkt. No. 339].  Thereafter, the Debtor's Business

and assets were sold by the Trustee to the Buyer on March 1, 2014 (the "**Sale**").  The Sale

required the payment to the Trustee of a percentage of gross income received by the Buyer for a

two year period following the Closing, which sale proceeds were fully collected by the Trustee

in April 2016.

E.    **Remaining Assets and Investigations Related to Alleged Causes of Action**

17.    Following his appointment, the only other assets of material value that the Trustee was able to locate and recover were as follows: (a) $23,000 recovered after the Trustee had pursued improper retainer payments by the Debtor made during the Chapter 11 Case to Mrs. Zachmann's Chapter 7 Trustee and his accountant, (b) approximately $13,960 recovered from Zachmann in connection with an adversary proceeding [adv. no. 14-00738] and a judgment obtained for that amount to recover for improper payments that Zachmann had received from the Debtor after he had taken ownership and control of the Debtor in or about April 2013, and (c) $9,241 recovered from the sale of certain stock owned by the Debtor that had been discovered and sold by an asset search recovery firm retained by the Trustee.

18.    As stated, the Trustee is currently holding one remaining asset, which is cash in the approximate amount of $459,000.

19.    When the Trustee was initially appointed, he was told of several accusations of wrongdoing raised by numerous parties including accusations by the Debtor's prior management and counsel concerning actions previously taken by Zachmann, as well as accusations from Zachmann and his attorney against the Debtor's prior management and its counsel.  In addition, the Examiner Reports had identified allegedly wrongful actions committed by Zachmann and/or potential issues concerning actions taken by certain third parties in connection therewith. However, the two year statute of limitations to bring most avoidance actions had long since expired by the time that the Trustee had been appointed, and thus, issues arose concerning whether any avoidance actions that perhaps could have been brought during that period while the Debtor was in control, should have been brought or could still be brought.  Ultimately though, the Trustee determined after much analyses and review that, with the exception of those matters identified in paragraph 17 above, it was not possible or prudent to expend further resources in

pursuit of any such alleged avoidance or other causes of actions.  The Trustee or his General

Counsel also contacted at least two different contingency fee counsel, however, none expressed

interest in pursuing any of the alleged actions. Accordingly, given the circumstances described

above, including the lack of resources, the legal obstacles, and the lack of interest, the Trustee

did not believe it feasible or prudent to pursue any other alleged and disclosed causes of action in

this Chapter 11 Case.

<b>F.      Remaining or Outstanding Claims in the Chapter 11 Case</b>

20.     According to the records of the Trustee and the Court Orders entered in the

Chapter 11 Case, the only outstanding and remaining claims in this Chapter 11 Case are as

follows:

**(i)      Prepetition Claims**

21.     On July 30, 2015, this Court granted the Trustee's motion and entered that certain

Order [Dkt. No. 421] which fixed (a) September 30, 2015 (the "**Claims Bar Date**"), as the

deadline to file proofs of claims and administrative claims in the Chapter 11 Case, and (b)

December 31, 2015 (the "**Claims Objection Deadline**"), as the deadline by which any

objections must be filed to proofs of claims and to claims listed as undisputed, liquidated, and

noncontingent in the Debtor's bankruptcy schedules filed in the Chapter 11 Case (the

"**Schedules**").

<b>(a)      The Allowed Non-HA Claims</b>

22.     At the time of the Claims Bar Date, there were two types of pre-Petition Date

claims asserted in the Schedules or in the Chapter 11 Case: (a) claims asserted by creditors of the

Debtor that were not HAs (the "**Non-HA Claims**"), and (b) claims asserted to be held by HAs

(the "**HA Claims**").  The Trustee has reviewed, and where appropriate, objected by the Claims

Objection Deadline to the Non-HA Claims, which objections have now all been resolved.  As a

result of the foregoing claim objections filed by the Trustee, approximately 14 Non-HA Claims

with claims totaling approximately $143,700 were disallowed, leaving 25 allowed Non-HA

Claims totaling $52,838.79 in this Chapter 11 Case (the "**Allowed Non-HA Claims**").

      (b)      <u>**The HA Claims and the Settlement Pertaining to Such Claims**</u>

23.      The HA Claims consist of 185 HA claims (the "**HA Scheduled Claims**") totaling

$7,514,426.54 listed in amended Schedule F filed by the Debtor in April 2012 [Dkt. No. 186]

(the "**HA Claims Schedule**") that relate to the Demutualization Matters described in the

Examiner Reports.  As stated, the Examiner Reports concluded that the Debtor had breached its

fiduciary duty to the HAs in its handling of the Demutualization Proceeds, and that there may be

at least three different theories upon which the HAs could hold claims for damages against the

Debtor as a result of the Debtor's actions.  The HA Scheduled Claims were filed by the Debtor in

this Chapter 11 Case after the Examiner Reports were issued and were based upon the specific

amount of the Demutualization Proceeds attributable to each HA according to the records of the

Debtor.  After reviewing the Examiner Reports and other information, the Trustee decided not to

object to the HA Scheduled Claims.

24.      Despite the Examiner Reports, Zachmann, as sole shareholder of the Debtor, filed

an objection to each and every one of the HA Scheduled Claims.  Thereafter, the Trustee then

facilitiated and entered into settlement negotiations with Zachmann, on the one hand, and with

representatives of certain of the HAs, on the other hand.  As a result of those negotiations a

settlement was reached (the "**Settlement**") and thereafter presented to and approved by the Court

in the Prepetition Claims Distribution Order entered on June 8, 2016, under which, *inter alia*, (a)

the Estate paid $100,000 to Zachmann; (b) the HA Scheduled Claims were allowed as

prepetition unsecured nonpriority claims in this Chapter 11 Case for the amounts identified in the

HA Claims Schedule (i.e., totaling $7,514,426.54) (the "**Allowed HA Claims**"); and (c) the

Court ordered that when distributions are made to holders of prepetition unsecured nonpriority

claims in this Chapter 11 Case, the holders of Allowed Non-HA Claims shall share pro rata in a

distribution that, in the aggregate, is equal to the greater of (i) $2,650 (which equates to a 5%

dividend to these claimants, whose allowed claims total $52,838.79), or (ii) an amount which

permits each of the holders of the Allowed Non-HA Claims to receive the same percentage

dividend that is to be received by each of the holders of Allowed HA Claims.

**(ii)**      **Chapter 11 Case – Administrative Expenses**

25.      As discussed above, the Claims Bar Date also constituted the deadline for filing

any Chapter 11 administrative expense claims, other than for professional fees.  No such

administrative expense claims were filed by the Claims Bar Date or have been asserted since

then.

26.      The only professional fees or other administrative expense claims that the Trustee

is aware of in this Chapter 11 Case consist of the following:

**(a)**      **Trustee Fees** – Attached hereto as **Exhibit B** are the invoices of the Trustee

reflecting a total of $168,100 that has been incurred by him as his fees as the Chapter 11 Trustee

in this Chapter 11 Case from May 1, 2013 until July, 2016[1], which can be summarized as

follows:

| Hours | Rate | Value |
|---|---|---|
| 336.20 | $500.00 | $168,100 |

The Trustee has received an interim payment in this Chapter 11 Case totaling $72,105.00

pursuant to this Court's Order entered on June 10, 2015 [Dkt. No. 396].  Accordingly, the

Trustee has a total of $95,995 that is outstanding and unpaid.  It should noted that the foregoing

---

[1]      The Trustee has continued to incur additional fees in these Chapter 11 Cases from and after July 2016, however, he is waiving and will not seek payment of such fees if this Motion is granted.

amount is actually <u>more</u> than the statutory compensation for trustees as established under section 326 of the Code, which is calculated based upon the distributions made in these Chapter 11 Cases.  Such statutory limitation on the Trustee's fees total $97,899.96 as is reflected in the worksheet that is on the last 2 pages of Exhibit B hereto, and is based upon those distributions as reported in the monthly operating reports previously filed in this Chapter 11 Case, the distributions made in connection with the closing of the sale of the Business, and the expected distribution of the Cash pursuant to the relief requested by this Motion (excluding the amount expected to be paid to the Trustee).  Accordingly, as is requested in section III below, the Trustee seeks allowance of his fees, limited to the amount provided in section 326 of the Code, of $97,899.96 under section 330 of the Code, and also payment of the unpaid portion of those fees totaling $25,794.96 (i.e., $97,899.96 - $72,105) from the remaining Cash.

     **(b)**    **<u>Trustee's General Counsel – Adelman & Gettleman, Ltd.</u>** -  As stated, the Trustee retained A&G by Order entered on May 15, 2013.  On June 19, 2013, this Court entered that certain Order [Dkt. No. 288] permitting monthly payments of 80% of fees and 100% of expenses to the Trustee's professionals, including A&G, provided the professionals submit monthly invoices to the Trustee, counsel to certain HAs, and the U.S. Trustee, and no objections are made thereto ("**Monthly Payment Procedure Order**").  As is summarized below, A&G has has incurred a total of $504,202.50 in fees and $6,372.47 in expenses for a total of $510,574.97 of fees and expenses from May 1, 2013, to September 30, 2016, as counsel to the Trustee in this Chapter 11 Case, of which $404,845.54 remains unpaid, after applying $105,729.43 previously received from prior fees ($398,473.07) and expenses ($6,372.47) that were paid to A&G under the Monthly Payment Procedure Order.  Copies of A&G invoices detailing said fees and expenses are attached hereto as **Exhibit C**, and a summary of those fees by attorney and by category is provided below:

Summary of A&G Fees By Attorney:

| Attorney | Hours | Rate | Value |
|----------|-------|------|-------|
| Brad Berish | 11.9 | $430.00 | $ 5,117.00 |
| Brad Berish | 901.80 | $445.00 | $ 401,301.00 |
| Chad Gettleman | .20 | $475.00 | $ 95.00 |
| Erich Buch | 35.80 | $380.00 | $ 13,604.00 |
| Henry Merens | 17.30 | $475.00 | $ 8,217.50 |
| Nicholas Dwayne | 5.50 | $150.00 | $ 825.00 |
| Steven Chaiken | 191.50 | $380.00 | $ 72,770.00 |
| Nathan Rugg | .20 | $415.00 | $ 83.00 |
| Alexander Brougham | 7.30 | $300.00 | $ 2,190.00 |
| Totals: | 1,171.50 | | $504,202.50 |

Summary of A&G Invoices By Category:

| Description | Total Hours | Time Value |
|-------------|-------------|------------|
| Category 1 – Administrative | 587.70 | $254,867.00 |
| Category 2 – Asset Sales | 246.00 | $108,923.50 |
| Category 3 – Fee Petitions | 25.00 | $ 11,125.00 |
| Category 4 – Claims Review | 79.90 | $ 34,255.00 |
| Cat. 5 – Avoidance Actions | 232.90 | $ 95,032.00 |
| Totals: | 1,171.50 | $504,202.50 |

Accordingly, as is requested in section III below, the Trustee seeks authority to (a) allow A&G's fees ($504,202.50) and expenses (6,372.47) under §330 of the Code in the amount of $510,574.97, and (b) pay the outstanding balance of such fees and expenses totaling $105,729.43 from the remaining Cash. It should noted that the foregoing amount sought is actually less than what A&G has incurred or will incur in this Chapter 11 Case, because if this Motion is granted and the foregoing fees and expenses are allowed and paid, A&G will waive the balance of its fees and expenses incurred or to be incurred after September 30, 2016, to close this Case in accordance with the terms of this Motion, which fees and costs A&G estimates may end up exceeding $15,000.

(c)    **Trustee's Benefits Counsel – Ogletree, Deakins, Nash, Smoak & Stewarts,**

**P.C.** -  As stated, the Trustee retained Ogletree by Order entered on June 15, 2013.  As is

summarized below, Ogletree has incurred a total of $884,700.50 in fees and $20,501.67 in

expenses for a total of $905,202.17 of fees and expenses from May 10, 2013, to August 31,

2016, as Benefits Counsel to the Trustee in this Chapter 11 Case, of which $188,891.45 remains

unpaid, after applying $716,310.72 previously received from prior fees ($695,987.10) and

expenses ($20,323.62) that were paid to Ogletree under the Monthly Payment Procedure Order.

Copies of Ogletree invoices detailing said fees and expenses are attached hereto as **Exhibit D**,

and a summary of those fees by attorney and by category is provided below:

Summary of Ogletree Fees By Attorney:

| Attorney | Hours | Rate | Fees |
|---|---|---|---|
| John L. Hayes | 4.70 | $395.00 | $1,856.50 |
| Aimee E. Dreiss | 17.30 | $385.00 | $6,660.50 |
| David Rosner | 26.10 | $435.23 | $11,359.50 |
| Brittany K. Chadek | 0.00 | $0.00 | $0.00 |
| Donald Hall | 0.00 | $0.00 | $0.00 |
| Sara Rodriguez | 0.00 | $0.00 | $0.00 |
| Sandra Blanch | 0.00 | $0.00 | $0.00 |
| Grace Ristuccia | 282.40 | $371.77 | $89,738.50 |
| Glenzie Green | 0.00 | $0.00 | $0.00 |
| Preston R. Burch | 0.80 | $500.00 | $400.00 |
| Karen N. Brandon | 1434.60 | $540.00 | $774,685.50 |
| **TOTAL** | **1765.90** | | **$884,700.50** |

Please note that if this Motion is granted, Ogletree has agreed to a voluntary reduction in

the fees that they will seek allowed and paid in this Chapter 11 Case of $35,000 from the

foregoing described fees, plus an additional waiver of any fees and expenses which it may incur

from and after August 31, 2016, in connection with completing the Discrepancy Resolution.

Accordingly, as is requested in section III below, the Trustee seeks authority to (a) allow

Ogletree's fees ($884,700.50 - $35,000 voluntary reduction) and expenses ($20,501.67) under

§330 of the Code in the amount of $870,202.17, and (b) pay the outstanding balance of such fees

and expenses totaling $153,891.45 ($870,202.17 - $716,310.72) from the remaining Cash.

(d)    **Trustee's Accountants – Popowcer Katten, Ltd.** -   As stated, the Trustee

retained the accounting firm of Popowcer Katten, Ltd. ("**PK**"), as his accountants in this Chapter

11 Case by Order entered on August 7, 2013.  As is summarized below, PK has incurred a total

of $26,332.00 of fees and -0- of expenses, for a total of $26,332.00 from August 7, 2013, to

October 14, 2016, as accountants to the Trustee in this Chapter 11 Case, of which $6,755.20

remains unpaid, after applying $19,576.80 previously received from prior fees and expenses paid

to PK under the Monthly Payment Procedure Order.  Copies of PK invoices documenting said

fees and expenses are attached hereto as **Exhibit E,** and a summary of those fees by accountant

are as follows:

Summary of PK Fees By Accountant:

| Accountant | Hours | Rate | Value |
|---|---|---|---|
| L. Popowcer | 3.6 | $320 | $1,152.00 |
| R. Mollo | .5 | $275 | $ 137.50 |
| L. West | 98.0 | $250/245 | $24,158.50 |
| B.Glusak | 3.8 | $235/230 | $ 884.00 |
| Totals: | 105.9 | | $26,332.00 |

Accordingly, as is requested in section III below, the Trustee seeks authority to (a) allow

PK's fees and expenses under §330 of the Code in the amount of $26,332.00, and (b) pay of the

outstanding balance of such fees and expenses totaling $6,755.20 from the remaining Cash.

(e)    **U.S. Trustee Fees** – According to the Trustee's records and calculations, there is

or will be due to the U.S. Trustee, fees in this Chapter 11 Case under 28 U.S.C. §1930 totaling

no more than approximately $10,400 for certain remaining quarter(s) in 2016 (the "**U.S. Trustee

Fees**").

(f)    **Discrepancy Resolution Application Fee –** As described above in paragraph 14, with the recent resolution of the Discrepancy Resolution Process, and in accordance with the Order Authorizing Discrepancy Resolution Process and the Trustee's obligations to the Buyer in connection with the Sale, the Trustee must now pay the balance of the Discrepancy Resolution Application Fee to the IRS totaling $34,750.

## III.    RELIEF REQUESTED

### A.    Allowance of Final Fees and Costs of Professionals and Trustee, and Proposed Distribution of Remaining Cash to Pay Administrative Claims in full and Balance to Pay the Allowed Pre-petition Claims Pro-rata

27.    For the reasons stated herein, the Trustee requests as follows:

(a)    **Allowance of Professional Fees –** The Trustee hereby requests final allowance under §330 of the Code of the following professional fees and expenses described above in paragraph 26(a-d):  (i) the Trustee's fees in the amount of 97,899.96; (ii) A&G's fees in the amount of $504,202.50 and costs in the amount of $6,372.47, (iii) Ogletree's fees in the amount of $849,700.50 and costs in the amount of $20,501.67, and (iv) PK's fees in the amount of $26,332.00.

(b)    **Distribution of Cash To Pay Chapter 11 Administrative Expenses in Full –** As stated, the sole remaining asset in this Chapter 11 Case consists of Cash totaling $459,000, which amount exceeds the only known outstanding and unpaid administrative expenses in this Chapter 11 Case, consisting of the Trustee's fees, his Professional's Fees, the remaining Discrepancy Resolution Application Fee, and the U.S. Trustee Fees described in paragraph 26 above.  There may be certain other ordinary and reasonable expenses that the Trustee may or has has incurred in connection with this Chapter 11 Case including, without limitation, bank account fees and fees to store and dispose of records (as described below), which may total a few thousand dollars (the "**Ordinary Remaining Administrative Expenses**"). Accordingly,

pursuant to the priorities established under sections 507 of the Code, the Trustee hereby requests

that the Cash be distributed to satisfy in full the unpaid Chapter 11 Case administrative expenses,

consisting of (i) $25,794.96 to the Trustee, (ii) $105,729.43 to A&G, (iii) $153,891.45 to

Ogletree, (iv) $6,755.20 to PK, (v) the U.S. Trustee Fees to the U.S. Trustee, (vi) the Ordinary

Remaining Administrative Expenses, and (vii) $34,750 to the IRS for the balance of the

Discrepancy Resolution Application Fee.

**(c)** **Distribution of Remaining Cash To Allowed Prepetition Claims Pro Rata** –

After distribution of the remaining Cash to pay the unpaid and outstanding Chapter 11 Case

administrative expenses in full as requested above, there will be in excess of approximately

$103,000 of Cash remaining.  The only remaining claims in the Chapter 11 Case consist of the

Allowed Prepetition Claims.  Pursuant to the terms of this Court's Prepetition Claims

Distribution Order, $2,650 of the remaining Cash is to be distributed pro rata to the 25 Allowed

Non-HA Claims totaling $52,838.79, and the remaining Cash totaling in excess of approximately

$100,000 is to be distributed pro rata to the 185 Allowed HA Claims totaling $7,514,426.54.

**(d)** **Unclaimed Distributions** – In the event that any distributions from the remaining

Cash made pursuant to the Order that is entered in response to this Motion are not negotiated

within sixty (60) days after delivery by the Trustee to such party, then the Trustee requests that

he may, in his sole and absolute discretion determine such funds to be unclaimed, in which event

they shall be free and clear of any and all claims, demands, or causes of action, and thereafter

shall be donated by the Trustee to the Chicago Bar Foundation and, if possible, for the express

purpose of funding the Bankruptcy Help Desk of this Court.

28.     As detailed above, this Motion establishes a quick and simple means to distribute

all remaining Cash in this Estate to creditors in accordance with the priorities established by the

Code.  The payment of the Trustee, Professional Fees, U.S. Trustee Fees, Ordinary Remaining

Administrative Expenses, and Allowed Prepetition Claims from the remaining Cash outside a

plan of reorganization may be authorized by this Court pursuant to sections 363, 502, 503 and

507 of the Code, as well as Section 105 of the Code to the extent necessary to implement its

authority under Sections 363(b) (as being in the best interests of the estate), 330, 502 and 503

(regarding allowance of claims) and 507 (as comporting with the priority scheme established

therein).

      29.      Section 363 of the Bankruptcy Code provides that the "trustee, after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b).  To approve the use, sale or lease of property outside the ordinary

course of business, there must be some "articulated business justification."  Fulton State Bank v.

Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991) (citation omitted); Comm. of Equity

Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); see also

Stephens Indus., Inc. v. McClung, 789 F.2d 386, 389-90 (6th Cir. 1986); In re Del. & Hudson

Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); In re Telesphere Commc'ns, Inc., 179 B.R. 544,

552 (Bankr. N.D. Ill. 1999).

      30.      In the ordinary course of business, the "business judgment rule" creates "a

presumption that in making a business decision the directors of a corporation acted on an

informed basis, in good faith and in the honest belief that the action taken was in the best

interests of the company."  In re S.N.A. Nut Co., 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995)

(citation omitted); see also Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-

Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-616 (Bankr. S.D.N.Y.

1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

Similarly, a court will defer to the trustee's judgment to make a sale outside the ordinary course

of business pursuant to Section 363, when the debtor has "sound business reasons for making the

sale." Schipper, 933 F.2d at 515; see also In re Efoora, Inc., 472 B.R. 481, 488 (Bankr. N.D. Ill.

2012) (noting that "great judicial deference" is given to a proposed sale of estate assets, "as long

as a sound business reason is given") (citation omitted).

31.    Ultimately the trustee must show that the use of assets outside the ordinary course

is in the best interests of the estate. See, Telesphere, 179 B.R. at 552-53 (relying on section

363(b) to authorize settlement resulting in a pro rata distribution to unsecured creditors).

Payment of the claims in this Chapter 11 Case in the manner herein provided will satisfy the

"best interests" standard. See, Grochocinski v. Zeigler (In re Zeigler), 320 B.R. 362, 383

(Bankr. N.D. Ill. 2005) ("Payment of a significant dividend to creditors . . . is a substantial

benefit to the estate."). In fact, the Trustee submits there could be no better result for the

creditors of the Estate under the circumstances at hand.

32.    The Seventh Circuit recognized that a bankruptcy court may use its powers under

Section 105(a) of the Bankruptcy Code "to implement" other provisions of this title. In re Kmart

Corp., 359 F.3d 866, 871 (7th Cir. 2004).

33.    Herein, the holders of Allowed Prepetition Claims will receive a much bigger

distribution if the relief in this Motion is granted, than they will receive if this Chapter 11

proceeding is prolonged, or a conversion ensues.  The only other possible alternatives for

distributing the remaining Cash and ending this Chapter 11 Case, will result in much delay and

significant costs.  For instance, there will be significant costs and delay should the Trustee

instead be required to file a disclosure statement and a plan of liquidation, and then distribute

ballots to creditors to vote, and finally, hold a confirmation hearing, all to achieve the simple

distribution of the remaining Cash requested by this Motion.  Similarly, there will also be

significant costs and delay should the Trustee be required to convert this Chapter 11 Case to

Chapter 7, where he (or if another trustee is elected) will still have to file papers containing

information not much different than is in this Motion to describe the final report of assets and

liabilities, all again, to achieve a distribution scheme that is no different than is requested

hereunder.  Furthermore, the combined relief requested in this Motion, including, in particular,

the allowance of the Professional and Trustee Fees requested herein, avoids other significant

expenses that would have to be incurred should the Trustee and his Professionals be instead

required to file four separate motions for the allowance of their fees requested herein.  The costs

that would be incurred for preparing such separate fee applications is compensable under the

case law, and would significantly reduce the remaining Cash available for distribution to the

Allowed Pre-petition Claims.  In re Thomas Fee, 2016 WL 1055067, pg. 1 (March 16, 2006

Bankr.N.D.IL. 1987).[2]  The cost of those additional motions alone, could result in a reduction or

a complete elimination of the dividend proposed hereunder to the holders of Allowed Prepetition

Claims, given the current amount of outstanding administrative expenses and the remaining

Cash.  Furthermore, the vast majority of the Professional Fees (i.e. 80%) and the Trustee's fees

(74%) have already been approved on an interim basis pursuant to prior orders of this Court,

including Monthly Payment Procedure Order.

     34.     Thus, requiring numerous other motions, a Chapter 11 plan process, and/or the

conversion of this case to Chapter 7, will only result in significantly more costs and delay that

will clearly reduce or even eliminate the remaining Cash and result in much smaller, or even no,

distribution to the holders of Allowed Prepetition Claims, as compared to that which will be

achieved by the relief sought in this Motion.  Further, the relief sought herein fully complies with

---

[2]      Should the Court require the Trustee and/or his Professionals file separate motions in
connection with the allowance of their fees under section 330 of the Code, the Trustee asks that
this Motion be continued to allow such parties to supplement this Motion with a separate
application from such party(ies) before the Court rules on the relief requested herein.

with the priority scheme established under Section 507 of the Bankruptcy Code and the Pre-

Pre-petition Claims Distribution Order.

35.    **Notice** - Similarly, there are no due process concerns at issue because the Trustee

is providing a copy of this Motion by at least 21 days notice to all parties who have appeared in

this Chapter 11 Case, the U.S. Trustee, the IRS, the Illinois Department of Revenue, the Buyer,

and all holders of Allowed Prepetition Claims in this Chapter 11 Case.[3]

### B.    **Request to Close Case and for Related Relief**

35.    The Trustee requests that, subject to the few remaining distributions or transfers

of the remaining assets described above in subsection (A), this Chapter 11 Case be closed

pursuant to section 350 of the Code, and that the Trustee be discharged subject to the remaining

tasks necessary to carry out the relief requested herein.

36.    Section 350(a) provides that "[a]fter an estate is fully administered and the court

has discharged the trustee, the court shall close the case".  Here, this Estate has been fully

administered and there is nothing left to do but distribute the remaining Cash as requested above.

The foregoing distribution is merely a ministerial task.  See, In the Matter of Wade, 991 F.2d

402, 407 (7th Cir. 1993)(case may be closed even if only ministerial tasks remain to be

completed; a ministerial task is one that does not involve complex legal issues).  In addition and

as stated, counsel for the U.S. Trustee has also consented to the utilization of this combined

motion for the relief requested herein in order to close this Chapter 11 Case, given the

circumstances described above.[4]

---

[3]      Any such party who has not filed an appearance in this Chapter 11 Case, will be
receiving a copy of this Motion and the proposed Order without the other exhibits to this Motion,
but they may receive a copy of such exhibits by requesting same and providing the Trustee's
counsel (appearing at the end of this Motion) with their email address or by accessing the
Court's docket.

[4] In the event that the Court does not allow the closure of the case, then the Trustee requests, in

37.    Finally, other relief requested by this Motion related to the closure of this Chapter

11 Case and the discharge of the Trustee, includes the following:

a.    <u>Books and Records</u> - The Trustee has possession of books and records pertaining

to the Debtor (the "**Books and Records**"), which by this Motion, he seeks authority to

retain for a period of at least six (6) months after this Motion is granted, after which time,

he would, in his discretion, destroy or otherwise dispose of any or all of such Books and

Records.  The Trustee anticipates that the Ordinary Remaining Administrative Expenses

relating to such storage and subsequent disposal costs may be about $900.

b.    Although the Trustee believes that he already has received this Court's authority

to execute the Discrepancy Resolution Agreements and pay the remaining balance of the

Discrepancy Resolution Application Fee to the IRS by virtue of this Court's prior Order

Authorizing Discrepancy Resolution Procedure, the Trustee, in an abundance of caution,

requests that such authority be given for same.

c.    Pursuant to Local Rule 5005-3 of this Court, the Trustee requests that the Court

waive the 15 page limitation for this Motion.  Such relief is warranted and reasonable

given the multiple relief sought herein and the long history of this Chapter 11 Case and

the authority recited herein, that was necessary to provide this Court and the interested

parties with the needed information and support for the relief requested herein.

---

the alternative, that the Chapter 11 Case be dismissed, however, if it is to be dismissed rather than closed, then the Trustee also requests that (a) the relief sought in subsection (A) above be granted, and (b) all Court Orders entered in these Chapter 11 Cases retain their effect notwithstanding the impact of section 349(b) of the Code.  The Trustee submits that cause for dismissal is satisfied under §1112(b) of the Code because all assets of the Estate will be distributed and there will be no assets for a Chapter 7 trustee to administer if the Chapter 11 Case were converted instead.  <u>See</u>, <u>In re Fall</u>, 405 B.R. 863, 871 (Bankr. N.D. 2008)(dismissal rather than conversion was appropriate where the estate as a whole lacked equity); <u>In re Pittsfield Weaving Co.</u>, 393 B.R. 271, 276 (dismissal rather than conversion was appropriate where the appointment of a Chapter 7 trustee would cost the estate additional administrative expenses).

WHEREFORE, Gregg Szilagyi, not individually, but solely as the duly appointed and

serving Chapter 11 trustee, respectfully requests the entry of the Order attached hereto and that

he be awarded such other and further relief as is otherwise just and equitable.

Respectfully submitted,

GREGG SZILAGYI, CHAPTER 11 TRUSTEE For
the Estate of Life Associates, Inc.

By:   /s/ Brad A. Berish
       One of his attorneys

BRAD A. BERISH, ESQ. (ARDC#06200891)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for the Chapter 11 Trustee**